1 | Howard Hershings
P.O. Box 190711
2 | San Francisco, Ca 94119-0711
415 216 8470
3

4 | In Pro Se

5

6

7

**FILED**

FEB 2 7 2008

**RICHARD W. WIEKING**
**CLERK, U.S. DISTRICT COURT,**
**NORTHERN DISTRICT OF CALIFORNIA**

8 | UNITED STATES DISTRICT COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10

11 | Howard Hershings,

12 | Petitioner,

13 | vs

14 | Santa Clara County Superior Court,

15 | Respondent.

16

CASE No. CV-08-992 MMC

NOTICE OF MOTION AND MOTION
FOR STAY OF THE PENDING JURY
JURY TRIAL IN RESPONDENT COURT
CASE NUMBER BB 517233 PURSUANT
TO § 2251 OF TITLE 28 U.S.C.

DATE:
TIME:
COURTROOM :

17    Petitioner Howard Hershings, herein will move the above Court for a stay of the pending jury

18 trial set for March 17, 2008 in Respondent Court based upon the undisputed factual showing that

19 respondent court  denial of petitioner's motion for funding " his defenses" under Faretta vs

20 California. Respondent court's systematically has excluded any and all opportunities for petitioner

21 to prepare "his defense" based upon a failure of respondent court to fund his defenses.

22    Petitioner seeks this stay pending disposition of the pending Habeas Corpus petition in the

23 above entitled case, based upon the determination by the State Courts that the respondent court can

24 deny an indigent criminal defendant any and all means to prepare "His Defense" which is contrary

25 to Supreme Court clearly established precedent that court must insure that a criminal defendant

26 have a meaning full access to court and a fair trial.

*Notice of Motion and Motion for Stay*

1    This Motion is based upon all pleadings already filed in this case as well as this notice of

2  motion and  Motion for stay, Points and Authorities in Support and the declaration of petitioner

3  herein and said oral arguments

4  Dated  Feb 27, 2008

Howard Herships

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

2

1

STATEMENT OF CASE

2    This case is in the status it is from a myriad numerous of unethical activities by both
3    respondent court as well as the Santa Clara County District Attorney's Office as follows.

4    At the court appearance in Jan. 18, 2006, the Santa Clara County District Attorney's
5    reduced the charges to a misdemeanor for Ms Heartwell and then the Court permitted complaint
6    Kirsch to enter into a civil compromise of the criminal charges pursuant to California Penal Code
7    Sections 1377-1378 as to only co/defendant Heartwell, see Exhibit 1.

8    However, the court never put into the record how much Ms Heartwell had to pay Kirsch
9    for said civil compromise of a criminal charge . However, at the first preliminary hearing Ms
10   Heartwell testified that she had to pay Kirsch $20,000.00, see Exhibit 2.

11   This creates a very serious question presented by a payment that exceeded the actual
12   damages caused and admitted to by co/defendant Heartwell is a criminal violation of California
13   Law to wit Section 153 of the Penal Code, it is compounding, see the case of *People v. Pic'l* 31 Cal
14   3rd 761.

15   Furthermore, the Santa Clara County District Attorney's Office at the first preliminary
16   hearing offer petitioner herein the very " same offer " as petitioner's co/defendant, just pay Kirsch
17   $20,000.00 and the case will go away, see Exhibit 2, page 6 lines 1-5.

18   It is also noteworthy to recognize that Respondent Court Judge, (Rise Pichon), issued an
19   arrest warrant against both petitioner and a co/defendant, (Ms Heartwell), for felony vandalism of
20   complaint, Steven Todd Kirsch's car on Nov. 1, 2005. However, the Judge never informed anybody
21   that she was never qualified to issue an arrest warrant in the case as the judges husband and
22   husband direct supervisor had numerous ties to Steven Todd Kirsch and his foundation. In fact
23   even when petitioner ask the question in open court the Judge denied and connection and petitioner
24   had to file a Statement of Disqualification and only then did Judge Pichon disqualify herself, see
25   Exhibit 3 pages 10 lines 20-25 & all of page 11.

26

3

1    Moreover, the filing of criminal case in order to obtain an advantage in a civil suit violates

2    California Rules of Professional Conduct Rule 5-100 (A) and as the Santa Clara County District

3    Attorney's Office was well aware that Steven Todd Kirsch had already filed a civil action on Oct

4    25, 2005, against petitioner seeking $5,000.00 in punitive damages, see Exhibit 4.

5    The very serious question that these issues presents are if Ms Heartwell had to ay

6    $20,000.00 to Kirsch for a civil compromise which was approved by the Santa Clara District

7    Attorney's Office as the original charge was a felony this amounts to a Hobbs Act violation under

8    color of state law, i.e. Extortion, see Exhibit 5 "No Threats, Please.

9    It should also be noted that at the Jan. 18, 2006 court hearing which co/defendant Ms

10   Heartwell entered into her civil compromise of a criminal case petitioner was not represented by

11   legal counsel and had not waived legal counsel under Faretta and the Court still proceeded in

12   violation of petitioner's rights for actual notice of the civil compromise and to contest that if the

13   co/defendant had paid the full dollar amount of the damages then the complaint must also be

14   dismissed against petitioner herein settlement with one joint tortfeasor, settles the with all parties,

15   see Exhibit 1.

16   Petitioner has for the last two years been attempting to obtain funding for "his defenses"

17   as he is indigent under California guidelines and the respondent Court has repeatedly denied any

18   and all funding based upon budgetary problems, see Exhibit 6

19       1. Petitioner is not allowed to interview witnesses as he is representing himself nor
            is petitioner allowed funding for a private investigator to interview witnesses

20          so that petitioner can prepare for a trial to contest the ability of the two purported
            eye witnesses to see what they claimed to see at a distance in excess of 300 feet away.

21          This right to place in contest the actual ability of the eye witnesses is supported by
            U.S. Supreme Court precedent and respondent court is denying petitioner's rights

22          by denying funding as to costly.

23       2. Petitioner sought funding for an Expert Witness to develop that the ID at a distance
            of over 300 feet away and this was also denied even through this denies petitioner's

24          rights to place in contest the actual ability to claim what the witnesses claim they
            saw to the jury was also denied as to costly.

25

26       3. Petitioner sought funding to obtain the copies of the Reporter's Transcript of the
            Second Preliminary Hearing for impeachment purposes and that request was also

4

1          denied as to costly.

2          4. Petitioner also sought compulsory service of process for witnesses and records
              at the trial currently set for March 17, 2008, and the respondent Court denied
3              as to costly due to a budgetary problems.

4          Respondent Court's refusal to fund petitioner's rights to put on "his defense" under Faretta

5    is an actual a denial and a deprivation of said right under Faretta as for some two years now

6    petitioner herein has been denied the right and with no prospect of do so prior to the jury trial

7    currently set for March 17, 2008 in respondent Court.

8          These practices of respondent Court to hold a jury trial without any prospect of adequately

9    preparing or presenting his defenses is contrary to a myriad of U.S. Supreme Court precedent

10   decisions since 1932 and all based upon that the respondent court can deny access to court because

11   of budgetary problems is also contrary the U.S. Supreme Court case of Tenn. vs Lane.

12         These practices of Respondent Court in refusal to fund any investigation of the facts so that

13   petitioner herein can prepare his defenses to show and present to the jury that the two purported

14   witnesses had no opportunity to observed what they testified to as the distances and location of the

15   Kirsch's vehicle makes it impossible which includes an appointment of a expert witness to testify

16   to impeach the witnesses' credibility, see Exhibit 7.

17         Petitioner requests a stay of the criminal case jury trial currently set for March 17, 2008 in

18   Dept 89 of the Respondent Court as to deny a indigent criminal defendant any and all opportunities

19   to prepare for a jury trial and present his defenses is a denial of his rights under Faretta vs

20   California.

21         Petitioner's rights to a fair trial far outweighs respondent rights to force petitioner to a trial

22   without any opportunity to put on his defense.

23

24

25

26

5

1               POINTS AND AUTHORITIES

2                           I

3               A CRIMINAL DEFENDANT HAS FEDERAL
                RIGHT TO REPRESENT HIMSELF IN A
4               CRIMINAL CASE AND A DENIAL TO FUND
                A INDIGENT CRIMINAL DEFENDANT'S
5               IS A DENIAL OF HIS RIGHTS TO PREPARE
                FOR A JURY TRIAL AND PERMIT HIM TO
6               PUT ON HIS DEFENSES WHICH IS CLEARLY
                ESTABLISHED U.S. SUPREME COURT
7               PRECEDENTS AND REQUIRES THE ISSUANCE
                OF A STAY PENDING A EVIDENTIARY HEARING
8               ON THIS PENDING PETITION FOR FEDERAL
                HABEAS CORPUS PETITION.

9

10          The controlling case law is U.S. Supreme Court case of Faretta vs California 422 U.S. 806

11      (1975)  which permits a criminal defendant to put on *"his defense"*.

12          In this case respondent court for over two years has prevented petitioner any all

13      opportunities to  do so based upon a determination that the costs were to high to fund under the

14      respondent court's budgetary problems, see Exhibits  attached to petitioner's Federal Habeas

15      Corpus Petition.

16          The United States Supreme Court in Tenn. vs Lane 541U.S. 509 (2004) held as follows:

17                          " This duty to accommodate is perfectly consistent with
                            the well-established due process principle that,
18                          "within the limits of practicability, a State must afford to
                            all individuals a meaningful opportunity to be heard" in its courts.
19                          Boddie, 401 U. S., at 379 (internal quotation marks and
                            citation omitted).20 Our cases have recognized a number
20                          of affirmative obligations that flow from this principle: the duty
                            to waive filing fees in certain family-law and criminal cases,
21                          21 the duty to provide transcripts to criminal defendants
                            seeking review of their convictions,22 and the duty to provide
22                          counsel to certain criminal defendants.23 Each of these cases
                            makes clear that ordinary considerations of cost and convenience
23                          alone cannot justify a State's failure to provide individuals with a
                            meaningful right of access to the courts."

24          Respondent Court's acts of denying any and all funding to an indigent self represented

25      criminal defendant is a denial of his Faretta Rights and as the U.S. Supreme Court stated in Mc

26

                                        6

1    Kasle vs. Wiggins, 465 U.S. 168 "The right is either respected or denied; its deprivation cannot

2    be harmless." McKaskle, 465 U.S. at 177 n8.

3        In this case while respondent court granted petitioner his rights to represent himself it has

4    denied petitioner any and all opportunity to prepare and to put on "his defense" under Faretta vs

5    California, supra which is respondent's way of denying petitioner his rights to do so.

6        It makes no sense to grant a right of self representation but to deny an indigent self

7    represented party any and all opportunity to do so.

8        As Mr Justice Sutherland stated in Powell vs Alabama 287 U.S. 45 (1932)

9                "It is vain to give the accused a day in court, with no opportunity
                to prepare for it, or to guarantee him counsel without giving
10               the latter any opportunity to acquaint himself with the facts or
                law of the case."

11

12       It likewise vain to grant the right to self representation indigent criminal defendant without

13   permitting any opportunity to the self represented criminal defendant any and all opportunity to

14   prepare for a jury trial on the case based upon lack of funding.

15       Moreover, as Mr Justice Marshall stated in *Aka v Ok.* 470 U.S. 68 (1985) as follows:

16               "This Court has long recognized that, when a State brings its
                judicial power to bear on an indigent defendant in a criminal
17               proceeding, it must take steps to assure that the defendant
                has a fair opportunity to present his defense. This elementary
18               principle, grounded in significant part on the Fourteenth
                Amendment's due process guarantee of fundamental fairness,
19               derives from the belief that justice cannot be equal where,
                simply as a result of his poverty, a defendant is denied the
20               opportunity to participate meaningfully in a judicial proceeding
                in which his liberty is at stake. In recognition of this right, this
21               Court held almost 30 years ago that, once a State offers
                to criminal defendants the opportunity to appeal their cases,
22               it must provide a trial transcript to an indigent defendant if the
                transcript is necessary to a decision on the merits of the appeal.
23               Griffin v. Illinois, 351 U. S. 12 (1956). Since then, this Court has
                held that an indigent defendant may not be required to pay a fee
24               before filing a notice of appeal of his conviction, Burns v. Ohio,
                360 U. S. 252 (1959), that an indigent defendant is entitled
25               to the assistance of counsel at trial, Gideon v. Wainwright,
                372 U. S. 335 (1963), and on his first direct appeal as of right,
26               Douglas v. California, 372 U. S. 353 (1963), and that such

7

1
2

assistance must be effective. See Evitts v. Lucey, 469 U. S. 387
(1985); Strickland v. Washington, 466 U. S. 668 (1984);
McMann v. Richardson, 397 U. S. 759, 771, n. 14 (1970)."

3    Petitioner simply as a result of his poverty, is being denied any opportunity to participate

4    meaningfully in a judicial proceeding in which his liberty is at stake " at the March 17, 2008

5    pending jury trial without an opportunity to marshal any defense.

6    The U.S. Supreme Court further went on *Ake vs Ok.* Supra stated the law regarding

7    proving funding for indigents in criminal trials as follows:

8
9
10
11
12
13
14
15
16
17

"Meaningful access to justice has been the consistent theme
of these cases. We recognized long ago that mere access to the
courthouse doors does not, by itself, assure a proper functioning
of the adversary process, and that a criminal trial is fundamentally
unfair if the State proceeds against an indigent defendant without
making certain that he has access to the raw materials integral
to the building of an effective defense. Thus, while the Court has
not held that a State must purchase for the indigent defendant
all the assistance that his wealthier counterpart might buy,
see Ross v. Moffitt, 417 U. S. 600 (1974), it has often
reaffirmed that fundamental fairness entitles indigent defendants
to "an adequate opportunity to present their claims fairly
within the adversary system," id. at 417 U. S. 612.
To implement this principle, we have focused on identifying the
"basic tools of an adequate defense or appeal," Britt v. North
Carolina, 404 U. S. 226, 227 (1971), and we have required that
such tools be provided to those defendants who cannot afford
to pay for them."

18    In the instant criminal case in respondent court petitioner has identified the following

19    opportunities to present his claims fairly within the adversary system;

20
21
22
23

1. Petitioner is not allowed to interview witnesses as he is representing himself nor
is petitioner allowed funding for a private investigator to interview witnesses
so that petitioner can prepare for a trial to contest the ability of the two purported
eye witnesses to see what they claimed to see at a distance in excess of 300 feet away.
This right to place in contest the actual ability of the eye witnesses is supported by
U.S. Supreme Court precedent and respondent court is denying petitioner's rights
by denying funding as to costly, see Exhibit 7.

24
25
26

2. Petitioner sought funding for an Expert Witness to develop that the ID at a distance
of over 300 feet away and this was also denied even through this denies petitioner's
rights to place in contest the actual ability to claim what the witnesses claim they
saw to the jury was also denied as to costly.

8

1   3. Petitioner sought funding to obtain the copies of the Reporter's Transcript of the
    Second Preliminary Hearing for impeachment purposes and that request was also
2   denied as to costly.

3   4. Petitioner also sought compulsory service of process for witnesses and records
    at the trial currently set for March 17, 2008, and the respondent Court denied
4   as to costly due to a budgetary problems.

5   As the U.S. Supreme Court in Ake vs Ok. Supra held that a criminal defendant's rights to

6   various safeguards at jury trial to insure fundamental fairness is meet before a criminal defendant

7   will not suffer an erroneous conviction.

8
                    "The private interest in the accuracy of a criminal proceeding
9                   that places an individual's life or liberty at risk is almost uniquely
                    compelling. Indeed, the host of safeguards fashioned by this
10                  Court over the years to diminish the risk of erroneous
                    conviction stands as a testament to that concern.
11                  The interest of the individual in the outcome of the
                    State's effort to overcome the presumption of innocence is
12                  obvious, and weighs heavily in our analysis."

13  It is petitioner's contention herein that respondent court proceeding to a jury trial without

14  any opportunity to prepare and proceed on petitioner's defense is contrary to the following U.S.

15  Supreme precedents in the following cases and these rights will be violated based upon a lack of

16  funding.

17  *Pointer vs Texas 380 U.S. 400* (1965), " The right granted to an accused by the Sixth

18  Amendment to confront the witnesses against him, which includes the right of cross-examination,

19  is a fundamental right essential to a fair trial and is made obligatory on the States by the Fourteenth

20  Amendment. *Washington vs Texas 388 U.S. 14*, The right under the Sixth Amendment of a

21  defendant in a criminal case to have compulsory process for obtaining witnesses in his favor

22  applies to the States through the Fourteenth Amendment. *Neil vs Biggers 409 US 188*, The

23  Reliability of Eye Witnesses Identification and the right to put said issues before the jury with an

24  expert opinion as the distances were in excess of 300 feet away. *Manson vs Beaithwiate* 432 U.S.

25  98 (1977), the right to contest the reliability of an identification made at a distance of over 300 feet

26  away and through the side of some 9 parked cars at a jury trial, see Exhibit 7, *Griffin vs Illinois*

9

1  *351 U.S. 12* (1956) The right to copies of the reporters' transcript of testimony in the case needed

2  for impeachment purposes. *Satterwhite vs Texas* 486 U.S. 249 (1988), the denial of these rights

3  is structural error requiring no showing of prejudice.

4  Petitioner in this case has had no opportunity to interview witnesses by either himself or

5  a private investigator to prepare his defenses, nor has petitioner been provided a copies of the

6  second preliminary hearing transcripts needed for impeachment purposes. Additionally, petitioner

7  has been denied the rights for compulsory service of process for records and witnesses at a jury

8  trial, and Petitioner is been deny his rights to place in contest the identification made at a distance

9  in excess of 300 feet and through the sides of at least 9 cars which is has been described as

10  physically impossible by one expert witness and the respondent court denied funding.

11  To permit respondent court to proceed under these factual basis is not only fundamentally

12  unfair but is contrary to U.S. Supreme Court cases dating back to 1932 prohibiting said practices

13  as there are no procedural safe guards in place to diminish the risk of erroneous conviction.

14  Petitioner herein has a made a showing of the four factors in determining whether a stay is

15  appropriate pending federal habeas corpus review pursuant to Section 2251 of Title 28 U.S.C. see

16  *In Re Holaday* 331 F2d 1169 (11th Cir ) and compare *Schillaci v Peyton* 328 Fed Supp 2d 1103

17  ( D. Hawaii 2004)

18
19  1. Petitioner is entitled to put on his defenses and clearly respondent court cannot prevent him from doing so as it would violate the Faretta Decision which would require the granting of the Habeas Corpus Petition.

20
21  2. It is also equally clear that if relief is not granted and no stay is issued that petitioner will be convicted and his individual's life or liberty at risk is almost uniquely compelling to prevent that without the host of safeguards fashioned by the U.S. Court.

22
23  3. The stay will not harm the people of the State of California as they have prevented petitioner for some two years already still steadfastly refuse to provide any and all opportunity to marshal any defenses

24  4. The granting of stay is in the public interest as it seeks to enforcement of adhering to over 70 years of U.S. Supreme Court decisions which are binding on respondent court.
25  Petitioner herein has raised these issues in the California Court of Appeal Sixth Appellate District and the California Supreme Court all of whom assert that petitioner has no federal
26  constitutional right to put on his defense and as such petitioner has no remedy to prevent

10

1    his liberty interest from being placed in question without putting on his defenses at a jury
     trial.

2

3    The U.S. Supreme Court in *McFarland v. Scott*, 512 U.S. 849 (1994), held as follows that

     Section 2251 of Title 28 U.S.C. permits a District Court to grant a stay pending a petition for Writ
4
     of Habeas Corpus as follows:
5

6                        "Federal courts cannot enjoin state court proceedings
                         unless the intervention is authorized expressly by federal
                         statute or falls under one of two other exceptions to the
7                        Anti Injunction Act. See Mitchum v. Foster, 407 U.S. 225,
                         226 (1972). The federal habeas corpus statute grants any
8                        federal judge *"before whom a habeas corpus proceeding is
                         pending"* power to stay a state court action *"for any matter
9                        involved in the habeas corpus proceeding."* 28 U.S.C. § 2251
                         (emphasis added). By the U.S. Supreme Court."
10
         The holdings of Respondent court that they can systematically deny any and all
11
     constitutional rights of petitioner to marshal any all of his defenses based upon " the cost factor"
12
     is contrary the holds of *Bounds vs Smith*, 430 U.S. 817 at 825 (1997)
13
                         " But the cost of protecting a constitutional
14                       right cannot justify its total denial."

15       And compare the holdings in *Wolf vs. Mc Donnell*, 418 U.S. 539 at 379 (1974),

16                       "The right of access to the courts, upon which
                         Avery was premised, is founded in the Due Process
17                       Clause, and assures that no person will be
                         denied the opportunity to present to the judiciary
18                       allegations concerning violations of fundamental
                         constitutional rights."
19
         Respondent contention that a trial court can deny any and all funding and proceed to a jury
20
     trial based upon a lack of funding is contrary to United States Supreme Court mandates and a stay
21
     is proper in this case.
22
         Moreover, in balancing in granting a stay one must look to if any party is being prejudiced
23
     by the act of staying a court case and in this case petitioner's rights to prepare for trial are
24
     paramount over respondent court's refusal to fund an indigent criminal defendant's defense, as
25
     clearly a federal constitutional rights cannot be denied and totally eliminated based upon a lack of
26

                                          11

1   funding.

2          In this case it is inconceivable of how an indigent self represented criminal defendant can
3   marshal a defense at a jury trial without any of the host of safeguards fashioned by the United State
4   Supreme Court over the years to diminish the risk of erroneous conviction stands as a testament
5   to that concern raised herein.

6          If this Court does not stay the jury trial in this case then petitioner federal constitutional
7   rights will be violated by respondent court and done in violation of petitioner absolute rights under
8   Faretta vs California.

9          Moreover, the interference with the Right of Self representation at a criminal trial was just
10  ruled upon in *Frantz vs Hazey* __F ed 3rd ___, (9th Cir 1/22/08) CA 05-16024 were the Ninth
11  Circuit En Bac review in which it violates a self represented criminal defendants's constitutional
12  rights when the Court does not permit a defendant to appear at a side bar conference address
13  questions presented by jury requesting taps of the 911 call.

14         In petitioner's case the respondent Court has systematically excluded any and all
15  opportunity to prepare and marshal his defenses herein and as such violates petitioner's rights to
16  self representation and Petitioner's rights to Due Process of Law.

17         These are structural error requiring no showing of prejudice and would be reversal per se
18  in the federal habeas corpus petition, the question must petitioner first suffer a conviction before
19  petitioner stop these proceedings?

20         Clearly the bad faith tactics of respondent court and the District Attorney's Office in this
21  case requires the grant of stay pending the issuance of a Federal Habeas Corpus as these are not
22  some quixotic rights but are only the rudimentary elements of Due Process of Law as clearly an
23  indigent criminal defendant has a right of access to court to marshal his defenses and the denial
24  because of budgetary problems by respondent court are no grounds to deny an indigent defendant's
25  rights to marshal his defenses.

26

12

1    WHEREFORE, petitioner requests that this Court grant a stay of any trial in case of People

2  vs Howard Herships until respondent Superior Court funds petitioner's requests to prepare for his

3  jury trial as petitioner has no prospect of putting on any defenses to the pending criminal trial based

4  upon respondent court's refusal to fund an indigent criminal defendant's defenses.

5

6  Dated Feb. 27, 2008

7                                          Howard Herships

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

13

TABLE OF EXHIBITS

PAGE[S]

EXHIBIT 1

MINUTE ORDERS FROM DEPT 87                                              1-2
FOR JAN. 18, 2006

EXHIBIT 2
REPORTERS' TRANSCRIPT
FROM FIRST PRELIMINARY HEARING                                         3-8

EXHIBIT 3

REPORTER'S TRANSCRIPT OF                            9-11
REFUSAL OF JUDGE PICHON'S
TO INFORM DEFENDANT OF
CONNECTION WITH KIRSCH

EXHIBIT 4

KIRSCH 'S DEMAND FOR $5,000.00
OR HE IS GOING TO FILE CIVIL SUIT                  12

EXHIBIT 5

ETHICAL ARTICLE ENTITLED
NO THREATS, PLEASE                                 13-15

EXHIBIT 6

FUNDING PROBLEMS WITH THE SANTA                    16-17
CLARA COUNTY SUPERIOR COURT

EXHIBIT 7

PHOTO SHOWING THE LOCATION OF
KIRSCH'S CAR AND FROM THE PURPORTED
TWO EYE WITNESSES WERE STANDING                    18

# EXHIBIT 1

# PAGES 1-2
# SUPERIOR COURT MINUTE ORDERS
# OF JAN. 18, 2006

```
7/4 PAS ALTO FAC                                    CASE NO.    88910845
    800 GRANT AVENUE                                CEN         01521199
    PALO ALTO, CA 94304                   DATE  01/16/2006  1:30 PM  DEPT.    90
EOPLE VS. KATRINA  HARTWELL               09/26/1996 CAN6192282   CO. PM A
.K.A.      510          SERPENTINE LA     CLERK  JAN MILLARD      DVV170 T
           REDWOOD CITY, CA 94065         HEARING PLEA
JDGE HON. FISE J. PICHON         DV:      AGENCY  PA-04312-MC550-MCADAMS
EPORTER PARREE MACHADO                    STATUS  0-BB  -10000/H3            TW Y:
EFF. ATTY.                       D.A. Bayarsky           APO
HARGES PC(C)(1)(PC5574(A)/(B)(1)                              VIOLATION DATE
                                                             10/24/2007
```

**NEXT APPEARANCE_____**

☑ Defendant Present ☐ Not Present    ☑ Atty Present  Emmanuel Todd    ☐ AD / PD / Legal Aide / Special App
☑ Arr'd ☐ Adv ☑ Arr Wav ☑ Amend/Comp Info ☐ Arr ☐ Plea ☐ IDC ☐ PTC ☐ Prob / Sent ☐ Interpreter _____ ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav ☐ Bail/ OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv      ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC ☑ Bail Exonerated ☐ Forfeited   Bond #_____
☐ Denies Priors/ Allegations/ Enhancements/Refusal ☐ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence    ☐ Ref'd _____  ☐ $_____ Costs Within 30 Days to Court
☐ Ref ☐ Appt PD / AD / Legal Aide ☐ Conflict Decl ☐ APO / Prop 36 ☐ P36 Re-Assm't  SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☑ ADO Relieved Paul App't'd     ☐ Crim Proc Susp ☐ Meh    ☐ BW Ordered $_____ ☐ Stayed ☐ To Issue
☑ Hrg on Motion Civil Compromise ☐ Doubt Decl Pursuant PC 1368  ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☑ Granted ☐ Denied ☐ Submitted ☐ Off Cal ☐ Subm on Report ☐ Found   ☐ BW Set Aside ☐ Recalled ☐ Filed
☐ Stip to Comm ☐ Drs. Appointed _____ ☐ Max Term _____ ☐ Committed _____  ☐ Proof of _____
☐ Prelim Wav ☐ Certified to General Jurisdiction ☑ MDA ☐ COM Amended # Ct 1 to misd pers to PC17
☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed  Other: _____

**PLEA Conditions:** ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP                    ☐ Add to Cal
☐ Jail / Prison Term of Viction Oliver Kirsch is sworn & examined
☑ Dismissal ☑ Striking Ct 1 COM — Civil Compromise is granted   ☐ Subm time of Sent ☐ Harvey Stip _____
☐ Adv ☐ Max Pen ☐ Parole/Prob ☐ Appeal ☐ Immig ☐ Reg ☐ PC290/HS11590/PC457.1/PC186.30 ☐ Future Serious Felony ☐ PC12021 (110) ☐ VC14607.8/PC666
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term  Fee $_____ ☐ Guilty Plea Rendered
☐ Waives Referral ☐ Ref'd to APO Full Rpt ☐ **PROBATION DENIED**   **FINES/FEES: PAY TO** ☐ Ref to DOR ☐ COURT ☐ TODAY
☐ Sentenced to _____ State Prison/County Jail ☐ Sent Suspended _____  COUNT ____ $_____ + PA $_____ ☐ Purs HS11350d
**PROBATION** ☐ Execution ☐ Imposition of sentence suspended for probation period  COUNT ____ $_____ + PA $_____
☐ COURT ☐ FORMAL PROBATION GRANTED for ____ Days / Mos / Yrs  AIDS / CPP $_____ + PA $_____
☐ Report to APO within _____ Days ☐ Terminated ☐ Upon Release   DPF  $_____ + PA $_____
☐ Perform____Hrs Volunteer Work as directed PO / SAP / CAP ☐ in lieu of fine  LAB  $_____ + PA $_____
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Delete FOP/MOP  DRF /RF $_____ Add'l RF $_____ Susp'd PC1202.45
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 6 mos  Enroll within _____ days  AEF  $_____ Original Fine $_____
☐ DL Susp/ Restr'd/ Rvk'd for _____ ☐ To, from, during Work/AlcoPrg/Jail/Sch/App  SECA $_____ **CTS PC2900.5** $ _____
☐ IID Not/Ordered/ Rmv'd Term _____ Yrs ☐ DSA thru APO / DOR / CRT ☐ Filed  NC  $_____ **TOTAL DUE** $ _____
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05  ASF /CPF $_____ Payments Granted / Modified
☐ DVPO issued / mod /term'd Exp _____ ☐ Victim Present  AR  $_____ $ _____ / Mo beginning _____
☐ Not own/possess deadly weapons ☐ Destroy / Return Weapon  SHELTER $_____ FINE STAYED _____
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold  DV  $_____ Committed @ $_____/day ☐ May Pay Out
☐ Substance abuse, DV, Psych, Parenting, Anger Mgmt, Theft cnsl / prgm  ATTY $_____ Consec/Conc to _____
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education    $_____ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
**OP:** ☐ Wav ☐ Arr'd _____ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP  P/INVEST $_____ ☐ P/SUP $_____ /Mo ☐ Waived
rob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to_____  CJAF ☐ $_____
☐ Original Terms & Conditions Except as Amended herein   ☐ Restitution $_____ to _____
☐ Co-terminus with _____ ☐ No Further Penalties / Reviews  ☐ To be determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
**AIL/PRISON** ☐ See Attachm't Pg for Add'l Orders, Charges, PC1385 Reasons            County Jail

| ount | F/M | Violation | Prison Term / Yrs | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|------|-----|-----------|-------------------|----------------------|--------------------|--------------------|

Civil proceedings are stayed and Deft is discharged
pursuant to PC1377/1378
Affidavit of Victim is filed

| nhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|------------|-------|-------------|-------|-------------|-------|-------------|-------|-------------|-------|-------|

**S =** _____ **ACT +** _____ ☐ PC4019 ☐ PC2933.1 = _____ TOTAL DAYS _____ TOTAL TERM _____
Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec_____All / Except ☐ EMP/PSP/WF/ERP/DRP/Co Parole/NP_____
☐ Sent Deemed Served ☐ Rpt to Local Parole ☐ Adv of _____ Yrs Parole/Appeal Rights ☐ Consec ☐ Conc to _____
Bal CJ Susp ☐ All but _____Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU _____
☐ Pre-process_____ AM/PM ☐ **Stay / Surrender / Transport to_____** @_____ AM/PM or Sooner
REMANDED-BAIL $_____ ☐ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ DOC TO CONTACT JAC for ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC-DOC TO TRANSPORT FOR BALANCE OF JAIL ☐ UPON AVAIL BED

```
69 PALO ALTO FAC                                    CASE NO.   BBS17233
   270 GRANT AVENUE                                 CEN        02531125
   PALO ALTO, CA 94306            DATE  01/18/2006  1:30 PM  DEPT.    82
OPLE VS. HOWARD RALPH HERSHIPS           11/11/1943 CAS0863297   CDY EKIN
K.A.   135         FELL ST       CLERK  JAN MILLARD         DVW719 M
   SAN FRANCISCO, CA 94119        HEARING  PLEA
DGEHON. RISE J. PICHON           DV:     AGENCY  PA-04512-MC550-MCADAMS
PORTERBARBEE MACHADO             CHILD:  STATUS  0-BB  -10000/H3      TW Y
EF. ATTY.                        D.A.  Bogarsky  APO
ARGES F(901)FC594(A)/(B)(1)                        VIOLATION DATE
                                                   10/24/2005
```

NEXT APPEARANCE **2-17-06 1:30PM ①88**

- [x] Defendant Present [ ] Not Present
- [ ] Atty Present
- _____ AD / PD / Legal Aide / Special App
- [x] Arr'd [ ] Adv [ ] Arr Wav [ ] Amend Comp/Info [ ] Arr [x] Plea [x] IDC [ ] PTC [ ] Prob / Sent
- [ ] Interpreter _____ [ ] Sworn
- [ ] PC97/ [ ] Filed [ ] On File [ ] Reptr. Adv / Wav [ ] Bail/ OR/ SORP [ ] Rect Dr Rpt [ ] FAR/ ERC
- [ ] Bail Apply [ ] Balance Exonerated
- [ ] NG [ ] Entered by CRT [ ] NGBRI / Adv [ ] PSet [ ] Prelim [ ] Readiness [ ] S / B MTC
- [ ] Bail Exonerated [ ] Forfeited   Bond #_____
- [ ] Denies Priors/ Allegations/ Enhancements/Refusal [ ] Further [ ] Jury [ ] CT [ ] Peo / Def Wav Jury
- [ ] Reassumption Filed [ ] Forfeiture Set Aside [ ] Bail Rein
- [ ] TW [ ] TNW [ ] TW / WD [ ] TW Sentence [ ] Ref'd_____
- [ ] $_____    Costs Within 30 Days to Court
- [ ] Ref / Appt PD / AD / Legal Aide [ ] Conflict Decl [ ] APO / Prop 36 [ ] P36 Re-Assm't
- SORP / OR [ ] Revoked [ ] Reinstated [ ] May Post & Forfeit
- [ ]_____ Relieved_____ Appt'd [ ] Crim Proc Susp [ ] Rein
- [ ] BW Ordered $_____ [ ] Stayed [ ] To Issue
- [ ] Hrg on Motion _____ [ ] Doubt Decl Pursuant PC 1368
- [ ] No Cite Release/SCIT [ ] No Request [ ] Cash Only
- [ ] Granted [ ] Denied [ ] Submitted [ ] Off Cal [ ] Subm on Report [ ] Found_____
- [ ] BW Set Aside [ ] Recalled [ ] Filed
- [ ] Stip to Comm [ ] Drs. Appointed _____ [ ] Max Term _____ [ ] Committed_____
- [ ] Proof of_____
- [ ] Prelim Wav [ ] Certified to General Jurisdiction [ ] MDA / COM Amended to _____
- [ ] Amended to [ ] (M) VC12500(a) / VC23103(a) [ ] Pur VC23103.5 [ ] DA Stmt Filed  Other:_____

**PLEA Conditions:** [ ] None [ ] No State Prison [ ] PC17 after 1 Yr Prob [ ] Includes VOP _____ [ ] Add to Cal
- [ ] Jail / Prison Term of _____
- [ ] Dismissal / Striking _____ [ ] Subm time of Sent [ ] Harvey Stip _____
- [ ] Adv [ ] Max Pen [ ] Parole/Prob [ ] Appeal [ ] Immig [ ] Reg PC290/HS11590/PC457.1/PC186.30 [ ] Future Serious Felony [ ] PC12021 (110) [ ] VC14607.8/PC666
- [ ] Wav Right to [ ] Counsel [ ] Court / Jury Trial [ ] Subpoena / Confront / Examine Witnesses [ ] Self-incrimination [ ] Written Waiver filed [ ] Plea / Absentia filed
- [ ] COP [ ] GUILTY [ ] NOLO CONTENDERE to charges & admits enhancements / allegations / priors [ ] PC17 [ ] Arbuckle [ ] Factual Basis found [ ] Findings stated
- [ ] Prop 36 Granted / Unamenable / Refused / Term [ ] DEJ Eligibility Find [ ] DEJ Granted / Rein / Term  Fee $_____ [ ] Guilty Plea Rendered
- [ ] Waives Referral [ ] Ref'd to APO Full Rpt  [ ] **PROBATION DENIED**   **FINES/FEES: PAY TO** [ ] Ref to DOR [ ] COURT [ ] TODAY
- [ ] Sentenced to _____ State Prison/County Jail [ ] Sent Suspended _____  COUNT ____ $_____ + PA $_____ [ ] Purs HS11350d
- **PROBATION** [ ] Execution [ ] Imposition of sentence suspended for probation period  COUNT ____ $_____ + PA $_____
- [ ] COURT [ ] FORMAL PROBATION GRANTED for ____ Days / Mos / Yrs  AIDS / CPP  $_____ + PA $_____
- [ ] Report to APO within _____ Days [ ] Terminated [ ] Upon Release  DPF  $_____ + PA $_____
- [ ] Perform_____Hrs Volunteer Work as directed PO / SAP / CAP [ ] in lieu of fine  LAB  $_____ + PA $_____
- [ ] Not drive w/o valid DL & Ins [ ] Adv VC23600 [ ] HTO [ ] Delete FOP/MOP  DRF /RF  $_____ Add'l RF $_____ Susp'd PC1202.45
- [ ] MOP [ ] FOP [ ] 12 hrs [ ] 3 mos [ ] 6 mos  Enroll within _____ days  AEF  $_____ Original Fine $_____
- [ ] DL Susp/ Restr'd/ Rvk'd for _____ [ ] To, from, during Work/AlcoPrg/Jail/Sch/App  SECA  $_____ CTS PC2900.5 $_____
- [ ] IID Not/Ordered/ Rmv'd Term _____ Yrs [ ] DSA thru APO / DOR / CRT [ ] Filed  NC  $_____ TOTAL DUE  $_____
- [ ] No contact with victim or family / co-defts unless appr by APO [ ] PC1202.05  ASF /CPF  $_____ Payments Granted / Modified
- [ ] DVPO issued / mod /term'd Exp _____ [ ] Victim Present  AR  $_____ $_____/ Mo beginning_____
- [ ] Not own/possess deadly weapons [ ] Destroy / Return Weapon_____  SHELTER  $_____ FINE STAYED_____
- [ ] Submit Search/Testing [ ] Educ/Voc Trng/Empl [ ] No alcohol / drugs or where sold  DV  $_____ Committed @ $_____/day [ ] May Pay Out
- [ ] Substance Abuse, DV, Psych, Parenting, Anger Mgmt, Theft cnsl / prgm  ATTY  $_____ Consec/Conc to _____
- [ ] PC296 (DNA) [ ] PC1202.1 HIV Test / Education  $_____ Fine / Fees [ ] Deemed Satisfied [ ] Commuted
- **VOP:** [ ] Wav [ ] Arr'd _____ [ ] Admits/Denies Viol [ ] Court Finds VOP / No VOP  P/INVEST  $_____ [ ] P/SUP $_____ _____/Mo [ ] Waived
- Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to_____  CJAF [ ]  $_____
- [ ] Original Terms & Conditions Except as Amended herein  [ ] Restitution $_____ to _____
- [ ] Co-terminus with _____ [ ] No Further Penalties / Reviews [ ] To be determined by APO/Court [ ] Referred to VWAC [ ] Collect Civilly
- **JAIL/PRISON** [ ] See Attachm't Pg for Add'l Orders, Charges, PC1385 Reasons                    County Jail

| Count | F/M | Violation | Prison Term / Yrs | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |

CTS = _____ ACT + _____ [ ] PC4019 [ ] PC2933.1 = _____ TOTAL DAYS _____ TOTAL TERM _____
- [ ] Straight time [ ] In Camp [ ] WWP [ ] PC1209 Fees [ ] Waived [ ] Court Rec_____All / Except [ ] EMP/PSP/WF/ERP/DRP/Co Parole/NP_____
- [ ] Sent Deemed Served [ ] Rpt to Local Parole [ ] Adv of _____ Yrs Parole/Appeal Rights [ ] Consec [ ] Conc to _____
- [ ] Bal CJ Susp [ ] All but _____Hrs/Days/Mos [ ] On Cond Complete Residential Treatment Prgm [ ] Serve Consec MO/TU/WE/TH/FR/SA/SU ____
- [ ] Pre-process_____ AM/PM [ ] **Stay / Surrender / Transport to**_____@_____ AM/PM or Sooner
- [ ] REMANDED-BAIL $_____ [ ] NO BAIL [ ] COMMITTED [ ] RELEASED [ ] OR [ ] SORP [ ] DOC TO CONTACT JAC FOR ASSM'T [ ] P36
- [ ] AS COND OF SORP [ ] BAIL INCREASED / REDUCED [ ] TO PRGM AS REC BY JAC-DOC TO TRANSPORT FOR BALANCE OF JAIL [ ] UPON AVAIL BED

**PROMISE TO APPEAR:** I will appear at all times and places as ordered by the Court, and have read and understand all conditions set forth on the reverse side.
BY _____ DEFENDANT

**2**

# EXHIBIT 2

# PAGES 3-8
# REPORTERS' TRANSCRIPT IN
# PEOPLE VS HERSHIPS

1    SUPERIOR COURT OF THE STATE OF CALIFORNIA

2        IN AND FOR THE COUNTY OF SANTA CLARA

3

4    BEFORE THE HONORABLE RISE JONES PICHON, JUDGE

5

6  THE PEOPLE OF THE STATE OF     )
   CALIFORNIA,                    )
                      Plaintiff,  )
7  vs.                            )
                                  )
8  HOWARD RALPH HERSHIPS,         )   NO.   BB517233
                                  )
9                     Defendant.  )
   _____)

10

11

12        REPORTER'S TRANSCRIPT OF PROCEEDINGS

13

14                    OCTOBER 19, 2006

15                    OCTOBER 27, 2006

16                    NOVEMBER 6, 2006

17                    NOVEMBER 7, 2006

18

19  APPEARANCES:

20

21  For the Plaintiff:     PINAKI CHAKRAVORTY
                           DEPUTY DISTRICT ATTORNEY
22

23

24  For the Defendant:     HOWARD HERSHIPS, In Pro Per

25

26

27                                              6

28  BARBEE MACHADO, CSR 9355, official Reporter



COPY                                            1.

3

1
2                          I-N-D-E-X
3
4
5    WITNESS FOR THE PEOPLE:                          PAGE
6
7    CARLOS DESANTIAGO
8    DIRECT EXAMINATION BY MR. CHAKRAVORTY:            10
9    CROSS-EXAMINATION BY MR. HERSHIPS:               35
10
11
12   STEVEN KIRSCH
13   DIRECT EXAMINATION MR. HERSHIPS:                 79
14   CROSS-EXAMINATION BY MR. CHAKRAVORTY:            95
15   REDIRECT EXAMINATION BY MR. HERSHIPS:            113
16
17   GERALD SORENSON
18   DIRECT EXAMINATION BY MR. HERSHIPS:              115
19   CROSS-EXAMINATION BY MR. CHAKRAVORTY:            130
20   REDIRECT EXAMINATION BY MR. HERSHIPS:            138
21
22
23   DAVID DUPERRAULT
24   DIRECT EXAMINATION BY MR. HERSHIPS:              149
25
26
27                                                  7
28   KATRINA CUNNINGHAM

2

4

1  KATRINA CUNNINGHAM
2  DIRECT EXAMINATION BY MR. HERSHIPS:                   167
3  CROSS-EXAMINATION BY MR. CHAKRAVORTY:                 174,197
4  REDIRECT EXAMINATION BY MR. HERSHIPS:                 230
5  RECROSS-EXAMINATION BY MR. CHAKRAVORTY:               234
6  FURTHER REDIRECT BY MR. HERSHIPS:                     234
7  FURTHER RECROSS-EXAMINATION BY MR. CHAKRAVORTY:       235
8
9
10
11
12                          EXHIBITS
13
14  PEOPLE'S EXHIBITS                       MARK    REC'D
15  1        Photograph                      23      25
16  2        Photograph                      23      25
17  3        Photograph                      23      25
18  4        Photograph                      23      25
19  5        Body Shop Estimates             26
20  6        Documents (deemed discoverable) 75
21  7        Audio Tape                     108
22  8        Transcript                     112
23  9        Declaration                    180
24
25
26
27                                                      8
28

3

5

1          MR. CHAKRAVORTY:  Finally, I wanted to put on
2     the record the offer in this matter, which I don't believe
3     has ever been on the record.  I believe it's a
4     misdemeanor.  The offer was made to the co-defendant, and
5     it's the same offer.
6          THE COURT:  Do you understand that,
7     Mr. Herships?
8          MR. HERSHIPS:  I understand.  The problem is
9     that I can't plead guilty to something I am not guilty of,
10    Your Honor.
11         THE COURT:  Mr. Herships, you have some motions.
12         MR. HERSHIPS:  Yes, I do.  My subpoena ducas
13    tecum was served on Mr. Kirsch by the private
14    investigator.  I gave him the subpoena, and I gave him the
15    return, and the record is he didn't want to give me a copy
16    because it shows the address where service was affected on
17    Mr. Kirsch.  I'm not supposed to have that.
18         THE COURT:  Who didn't want to give it to you?
19         MR. HERSHIPS:  My private investigator.  Said
20    would he file it.  Then he informed me that he did file
21    it.  I've never received the documents, and the documents
22    are not here in court, and I need the documents to proceed
23    with only some of this preliminary hearing, and I'm at a
24    loss as far as what to do as far as that issue goes,
25    because if he didn't comply with the subpoena ducas tecum,
26    he's in violation and a warrant can issue for his arrest.
27         I mean, I checked with the clerk, they don't
28    have anything.  They have no records of anything in their

1    A.   I don't recall.

2         MR. CHAKRAVORTY:   Objection, Your Honor; there's

3    no question yet.

4         THE COURT:   The objection is sustained.

5    BY MR. HERSHIPS:

6    Q.   You have -- have you paid Mr. Kirsch anything

7    for damages done to his car in this case?

8    A.   I don't recall actually.   It was a settlement,

9    so it included everything.

10        MR. HERSHIPS:   Well, I would address the issue

11   of the, quote, settlement in this case.   You know this is

12   my next line of questioning to show what is going on.

13        MR. CHAKRAVORTY:   I see the foundation for

14   relevance, Your Honor.   I just wanted him to lay the

15   appropriate foundation.   I'm not sure it's been laid at

16   this point, but I will go ahead and stipulate that he can

17   ask the question at this time.

18        THE COURT:   Okay.  Go ahead.

19   BY MR. HERSHIPS:

20   Q.   So you entered into a settlement agreement, a

21   civil compromise in this case, and in doing so, have you

22   paid Mr. Kirsch for the damages to his vehicle?

23   A.   To clarify -- I need clarification of the

24   question.   It was very complex, the whole settlement.   It

25   involved the civil issue and the criminal issue, and it

26   was all consolidated into a settlement.   That's why I'm

27   having a difficult time answering this pending question.

28   It was to settle both parts together.

171

7

1       Q.    So the settlement that you entered into with
2   Mr. Kirsch was both for the $40,000 plus judgment out of
3   small claims court that he got against you, and also the
4   criminal case was all folded into one.  Is that what I
5   hear you stating?
6       A.    I'm a bit confused how this happened.  I had my
7   attorney handling this issue.  My goal was to settle both
8   matters and move on with my life.
9       Q.    You don't know how much the payment to
10  Mr. Kirsch was and what the terms were?
11      A.    There are payments.  I have to go back and look
12  exactly how much was paid, but it was a settlement over a
13  period of time, not just one -- it was a settlement over a
14  period of time.
15          THE COURT:  Do you have any idea what the total
16  amount was?
17          THE WITNESS:  Idea, probably about $20,000.
18  BY MR. HERSHIPS:
19      Q.    So there was payment of approximately $20,000.
20  In that payment you were supposed to cooperate with
21  Mr. Kirsch and more or less agree that he never attempted
22  to stalk you or do anything of the sort because you made a
23  statement in your declaration that he never stalked you.
24          MR. CHAKRAVORTY:  Objection, Your Honor;
25  compound and leading.
26          THE COURT:  The objection is sustained.
27  BY MR. HERSHIPS:
28      Q.    Did you ever make the accusation that Mr. Kirsch

172



# EXHIBIT 3

# PAGES 9-11
# REPORTERS' TRANSCRIPT IN
# PEOPLE VS HERSHIPS

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2              IN AND FOR THE COUNTY OF SANTA CLARA

3

4          BEFORE THE HONORABLE RISE JONES PICHON, JUDGE

5

6  THE PEOPLE OF THE STATE OF          )
   CALIFORNIA,                         )
7                        Plaintiff,    )
                                       )
   vs.                                 )
8                                      )
   HOWARD RALPH HERSHIPS,              )    NO.  BB517233
                                       )
9                        Defendant.    )
                                       )
10 _____)

11

12             REPORTER'S TRANSCRIPT OF PROCEEDINGS

13

14                       OCTOBER 19, 2006

15                       OCTOBER 27, 2006

16                       NOVEMBER 6, 2006

17                       NOVEMBER 7, 2006

18

19 APPEARANCES:

20

21 For the Plaintiff:      PINAKI CHAKRAVORTY
                           DEPUTY DISTRICT ATTORNEY
22

23

24 For the Defendant:      HOWARD HERSHIPS, In Pro Per

25

26

27

28 BARBEE MACHADO, CSR 9355, Official Reporter        6



                         COPY                        1.

                                                     9

 1   PALO ALTO, CALIFORNIA                    NOVEMBER 6, 2006

 2                          PROCEEDINGS

 3            THE COURT:  This is the continuing preliminary

 4   examination in the case of the People of the State of

 5   California versus Howard Herships. May I have appearances,

 6   please.

 7            MR. CHAKRAVORTY:  Pinaki Chakravorty for the

 8   People.

 9            THE COURT:  Mr. Herships is in pro per.

10            MR. HERSHIPS:  Howard Herships.

11            MR. CHAKRAVORTY:  I believe the witness Katrina

12   Cunningham is still on the stand, Your Honor, in the

13   middle of cross-examination.  Last time the court took a

14   break to see if Ms. Cunningham wanted to assert her right

15   under the Fifth Amendment privilege and speak to an

16   attorney, and I believe Mr. Goodman is here in court today

17   representing her.

18            THE COURT:  Let's see, Ms. Hartwell, will you

19   please take your position at the witness stand.

20            MR. HERSHIPS:  I wanted to address one thing

21   that came up over the weekend.

22            THE COURT:  Would you wait one minute, please.

23            MR. HERSHIPS:  Excuse me?

24            THE COURT:  Would you wait one minute.

25            MR. HERSHIPS:  Under 170.13(a) of the Code of

26   Civil Procedure I've been informed and I found out that

27   Mr. Kirsch, through his foundation, has contributed over

28   two million dollars to DeAnza College, and I found out

                                                  *10* 194

1    that your husband is a professor there.  I do not know if
2    any of the funds are allocated or where they go to, and I
3    think there may be a problem if some of the funds are used
4    for any of his programs or anything.  I do not know what's
5    going on that way.  I have no way of finding out.
6              THE COURT:  Do you know what programs he funded?
7              MR. HERSHIPS:  I do not know.  I have to find
8    out.  I only found out about it Sunday morning.
9              MR. CHAKRAVORTY:  I guess the question I would
10   have, Your Honor, if I can respond, what does Mr. Herships
11   want to do as a result?
12             MR. HERSHIPS:  I don't know.  I have no problem
13   so far with the Court, but I mean I do not know what
14   parameters there are of the funds.  I'd have to get my
15   investigator that's been appointed to go and find out.  I
16   have no way of knowing.
17             THE COURT:  Now, what I would think, until you
18   find out, I mean you should make your motion when you find
19   out, but at this time if you don't believe that I'm
20   prejudice for some reason based on that, then we should go
21   ahead.
22             MR. HERSHIPS:  I hear you, but I don't want to
23   have to go through the proceedings of doing that.
24             THE COURT:  This is the not the proper way to
25   make that motion.
26             MR. HERSHIPS:  Excuse me?
27             THE COURT:  This is not the proper way to make
28   that motion.  When you get the facts --

# EXHIBIT 4

# PAGES 12
# KIRSCH'S DEMAND FOR $5,000.00
# FOR PAYMENT

⚠ Attachments can contain viruses that may harm your computer. Attachments may not display correctly.

**Steve Kirsch**

| From: | Steve Kirsch           ▶ ·                                                        | Sent:  Mon 10/24/2005 11:40 PM |

| To: | Steve Kirsch; 'David Duparrault (▇▇▇▇▇▇▇)'; 'Sorensen Gerald'; 'Stephen Kent Eliot'; 'Jbrown@redbrownlaw.com'; 'Mark Klein (▇▇▇▇▇▇▇▇▇▇▇▇▇▇)'; Jim Sutton; Carrie Anderson |

Cc:

Subject:     RE: Demand Letter for $5K in actual and punitive damages to my vehicle

Attachments: 📄 Chronology.doc(33KB)

Since some were curious, here's the writeup.

GS and DD: let me know if there are any errors.

**/2**

# EXHIBIT 5

# PAGES 13-15
# ETHICAL ARTICLE NO THREATS PLEASE

===== MCLE SELF-STUDY =====

# No
# Threats,
# Please

## California Joan Explores Liabilities
## For Threatening To Present Criminal,
## Disciplinary Or Administrative Charges

**By ELLEN R. PECK**
© 2007-08. All rights reserved.



Watcha reading, Cali?" California Joan's review of the new State Bar California Attorney Guidelines of Civility and Professionalism (calbar.ca.gov) was interrupted by Meryl Terptitude's voice. As she held up the self-explanatory cover and motioned for Meryl to sit in one of the comfy chairs in her office, her face registered surprise.

Meryl smiled broadly, saying with that devilish twinkle in his eye, "Civility guidelines . . . I'll have to read these now that I'm back! Yes, all federal and state charges against me were dropped. So the firm partners asked me back and here I am. I ran into a few ethical issues so I am a supplicant before you at the temple of ethics, beseeching you for words of wisdom."

"Welcome back, Meryl! Things have been a little quiet without you," Cali greeted Meryl warmly.

"I was engaged to jointly represent a couple (the Parents) who wanted to adopt a child and a birth mother (Mary Mater) who wanted to give up her unborn child for adoption. Ms. Mater had a very healthy pregnancy, the birth went well; the beautiful child was healthy and was delivered to the Parents. Two days ago, Ms. Mater, the Parents and I met when Ms. Mater demanded $50,000 or the return of the child. Mr. Parent recorded the entire conversation. We told Ms. Mater we'd think about it and meet with her tomorrow afternoon at my office. Ms. Mater repeated the demand on the telephone to Mr. Parent this morning and to me at my office; both conversations were recorded," Meryl told Cali.

"Cali started to warn Meryl: "You need to check on the legality of your recordings and I hope you obtained the extensive written and informed consent from both the Parents and Ms. Mater." (Fam.C., §6800; Rule 3-310(C)(1) and (2), Rules of Professional Conduct (CRPC))

"Tomorrow, I want to tell Ms. Mater that I have advised the Parents not to pay her, that we had recorded her prior demands, that the recordings demonstrated her criminal conduct of attempted extortion for which she could be prosecuted, that the recordings would be available regarding any action she might take to have her child returned. However, if the adoption goes through without any action on her part to obtain the child, I would destroy the recordings," Meryl beamed.

"Meryl, there are two potential ethics issues here," Cali advised. "First, CRPC 5-100(A) prohibits a lawyer from threatening to present

criminal, administrative or disciplinary charges to obtain an advantage in a civil dispute. Second, the circumstances are very close to an older case called *Arden v. State Bar* (1939) 52 Cal.2d 310, 315-316, 320-321. In that case, the Supreme Court determined that a threat adverse to a current or former client birth mother, or whether or not it constituted attempted extortion, fell within the definition of an act of moral turpitude in violation of Business and Professions Code §6106."

"I am not going to threaten her," Meryl protested. "I just want to advise her of the Parents' and my intent."

"Mr. Arden disclaimed his threat, too," Cali countered. "However, the court observed that it was clear that Mr. Arden was threatening the birth mother with a prosecution unless she desisted from her threat to interfere with and overturn the pending adoption. (*Arden v. State Bar* (1939) 52 Cal.2d 310, 321) Plus, you cannot take an adverse action against your own client by making such a threat." (CRPC 3-310(C)(2); *Flatt v. Superior Ct.* (1994) 9 Cal.4th 275, 284-285)

Meryl threw up his hands in sur-



Ellen R.
Peck

render. "You've convinced me. I want to stay as clean as a whistle, so I'll withdraw from representing both parties immediately."

Cali breathed a sigh of relief. Meryl started telling her about another client matter.

"For about six weeks, I have represented Mrs. Smith in a dissolution of marriage action. Mr. Smith, who runs a very prominent international 'soldier for hire' business, is representing himself in the dissolution action," Meryl said. "About two weeks ago, Mr. Smith came to my home office to discuss the case. We had a fistfight. I brought criminal charges of assault and battery against him because he destroyed my antique Louis XV desk and chair and two original Tiffany lamps and injured me. The property damages were about $50,000 and medical expenses $750.

"A few days after the fight," Meryl continued, "the Smiths signed a marital settlement agreement, which called for the payment by Mr. Smith of my attorney's fee of $25,000 following the sale of his separate property, a gun collection. The criminal trial is in a month." Meryl shifted uneasily in his chair and Cali waited for the punch line.

"Last weekend, the Smiths reconciled. Mrs. Smith came to my office the next day and begged me to drop the criminal charges. Overcome with her beauty and her tears, I said I would.

"Two days ago, she called and said that she had not been dropped yet. I told her, 'Well, tell your husband to deposit the $25,000 in fees pursuant to the marital settlement agreement and then I'll drop the charges.' Later that afternoon, Smith's criminal attorney called me and asked if I would be willing to drop the criminal charges against Mr. Smith. I replied that 'if the attorney's fees were paid for the divorce, I would consider dropping the criminal action' and that he came a deer in the headlights.

"Meryl, your situation is exactly like a disciplinary case called *Bluestein v. State Bar* (1974) 13 Cal.3d 162, 166-170 except that the husband did not pay the legal fees and was acquitted at the criminal trial," Cali said. "The California Supreme Court held that Mr. Bluestein 'willfully and wrongfully attempted to use criminal proceedings in order to collect a legal fee in the divorce action' and that he committed acts involving moral turpitude (Bus. & Prof. Code, §6106) by using extortionate means to attempt to obtain payment of his attorney's fee in a divorce action.

"The court noted that even if these acts did not constitute attempted extortion, the statements indicating he would drop, or consider dropping, the criminal charges against the husband if he paid petitioner the attorney's fee in the divorce action constituted an oppressive method of attempting to collect that fee and involved moral turpitude."

"What can or should I do?" Meryl asked.

"Withdraw any demand for any fees in connection with the criminal case immediately and hope that you are not prosecuted yourself," Cali said.

"You mean that my professional standards prohibit me from presenting criminal charges to or cooperating with law enforcement regarding criminal charges? I'm the victim here!" Meryl did his best imitation of a victim.

"Meryl, the rule does not prevent you from presenting criminal, administrative or disciplinary charges. It simply prohibits you from communicating a threat to present such charges. Bottom line, just do it, without any threats," Cali clarified.

Mollified, Meryl started a new topic. "Well, I can see that I need some help on another matter. Let me tell you about it . . .

"About 18 months ago, I finalized the marital settlement, child custody and final dissolution of marriage of Sammy Starr, the celebrated star of action adventure flicks, from his wife, Serenity. He was having a torrid affair with the famous star of

See NO THREATS on Page 10

---

## SELF-ASSESSMENT TEST

READ THIS ARTICLE AND TAKE THE
ACCOMPANYING TEST TO EARN ONE HOUR
OF SELF-STUDY MCLE CREDIT IN LEGAL ETHICS.

**FOLLOW INSTRUCTIONS ON TEST FORM**

•

*This month's article and test provided by the*

*California Bar Journal*

•



THOMSON
WEST

13

## No

## THREATS, PLEASE!

### LIABILITIES FOR THREATENING TO PRESENT CRIMINAL, DISCIPLINARY OR ADMINISTRATIVE CHARGES

CONTINUED FROM PAGE 9

Asian martial arts films, Lili Li, whom he has now married. Lili, a citizen of Taiwan, has applied for United States citizenship.

"Sammy owes me about $250,000 in past due fees from the dissolution action, which I have not been able to vigorously pursue due to my trouble with federal authorities. Sammy has recently declared bankruptcy and I am a creditor in the bankruptcy proceedings. That last picture starring Sammy and Lili bombed badly. Since he put all of his own money into the production, he has virtually no resources left to pay his considerable debts.

"Lili, however, has tons of money and Sammy listens to her. I called her last night and told her how unhappy I am at standing in line at the bankruptcy court with other creditors. I told her that if she did not pay my bills, I'd inform authorities that I would find out that she has been importing opium into the United States and that she and Sammy have their own opium den at Sammy's house, which is always open at parties. That means immediate deportation, which will not only interrupt her

---

domestic bliss but her filming projects here.

"I also told her that children's protective services will receive information that Sammy and his guests smoke opium at times when he has custody of the children at his home. There will be an investigation of potential abuse and, of course, Serenity will regain custody of the children. An internet blog on the right site will get a whole spread in People magazine, putting Sammy's and Lili's careers on the rocks for awhile."

"Meryl, call Lili immediately," she ordered. "Apologize. Tell her that you were stressed out and you were blowing off steam. Tell her that you did not intend to threaten her and that you did not mean it. Your conduct is just like Lindenbaum v. State Bar (1945) 26 Cal.2d 565, 569-572, holding that such threats constitute oppressive methods of attempting to collect fees and attempted extortion, which both involve moral turpitude (Bus. & Prof. C., §6106.) It also involves a threat to present administrative charges to obtain an advantage in a civil dispute." (CRPC 5-100)

"What is an administrative charge?" Meryl asked.

"To extend that administrative charges' means the filing or lodging of a complaint with a federal, state or local governmental entity which may order or recommend the loss or suspension of a license, or may impose sanction of a quasi-criminal nature but does not include filing charges with an administrative entity required by law as a condition precedent to maintaining a civil action," Cali explained. (CRPC 5-100(B))

"So, calling Lili that I will present a charge with federal immigration

---

authorities concerning her importation and use of opium would be a 'threat' to present an administrative charge, since the result of the administrative action (deportation) is quasi-criminal?" Meryl asked.

"Yes!" said Cali. "However, sending a letter threatening to file administrative charges against an employer with the EEOC for employment discrimination pursuant to Title VII of the Civil Rights Act of 1964, where the filing of such charges is a prerequisite to the filing of a civil lawsuit, is not a violation of rule 5-100(A). Since a party is required to exhaust administrative remedies by filing a claim with the EEOC, such attempts are intrinsically related to the objects of the civil litigation and thus are not collateral.' (State Bar of California Standing Committee on Professional Responsibility and Conduct Formal Opinion No. 1994-91)

"One of the other dangers is that Lili and Sammy can sue you civilly for extortion," Cali warned.

"No problem!" Meryl laughed confidently. The litigation privilege is available to me for any conduct in a civil dispute (Rosa v. Creel Printing & Pub. Co. (2002) 100 Cal.App.4th 736, 745-746). Moreover, in a recent case, the California Supreme Court comments that civil causes of action against a defendant for acts of extortion may be barred if the subject of the litigation privilege but it reserved deciding the issue." (Flatley v. Mauro (2006) 39 Cal.4th 299, 322).

"Well, then," Meryl said, "I can bring a special motion under the anti-SLAPP extortion suit under the anti-SLAPP

See MCLE: LIABILITY on Page 16

---

### CERTIFICATION

■ THIS SELF-STUDY ACTIVITY HAS BEEN APPROVED FOR MINIMUM CONTINUING LEGAL EDUCATION CREDIT BY THE STATE BAR OF CALIFORNIA, IN THE AMOUNT OF ONE HOUR OF LEGAL ETHICS.

■ THE STATE BAR OF CALIFORNIA CERTIFIES THAT THIS ACTIVITY CONFORMS TO THE STANDARDS FOR APPROVED EDUCATION ACTIVITIES PRESCRIBED BY THE RULES AND REGULATIONS OF THE STATE BAR OF CALIFORNIA GOVERNING MINIMUM CONTINUING LEGAL EDUCATION.

### HOW TO RECEIVE 1 HOUR OF MCLE CREDIT

● Answer the test questions on the form below. Each question has only one answer.

● Mail form and a $25 processing fee to:

California Bar Journal / Test
State Bar of California
180 Howard St.
San Francisco, CA 94105-1639

● Make checks payable to State Bar of California.

● Correct answers and a CLE certificate will be mailed to you within four weeks.

NAME

LAW FIRM/ORGANIZATION

# MCLE: Liability for threats to present criminal charges

Continued from Page 10

(strategic lawsuit against public participation) statute (C.Civ. Proc., §425.16). I can get the action dismissed plus get attorney's fees for my efforts. My so-called threats were in furtherance of petitioning activities and protected by the First Amendment."

"Reconsider, Meryl!" Cali disagreed. "A recent California Supreme Court case involved the famous *Lord of the Dance* impresario Michael Flatley, who sued a lawyer for extortion after the lawyer threatened to continue presentation of criminal charges for the purported rape of his client, after his client had a one-night stand with the dancer. The court held that if the defendant concedes, or the evidence conclusively establishes, that the protected speech or petition activity was illegal as a matter of law (like criminal extortion), the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action (*Flatley v. Mauro, supra,* 39 Cal.4th at pp. 321, 332). In addition, the court rejected application of the anti-SLAPP statute to activities for which the litigation privilege may provide a defense." (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 325)

Meryl backed down. "All right, Cali! I will cease and desist from those threats. Help me with one last case."

"I represent three plaintiffs in separate civil actions, all of which have settled and we have received settlement funds. My clients all dispute the charges of three medical lienholders. Yesterday, I received a letter from Leland Leland, Esq., who has been retained by the several medical lienholders to collect money from my clients."

Meryl read his pertinent response to the Leland letter aloud:

"Please be advised that your clients are under criminal investigation. If you attempt to damage my or my client's credit, I will make your conduct part of the District Attorney's and the FBI's investigation. Moreover, if you do not cease and desist further action, I am going to turn over your name and company information to the FBI.

"cc: Federal Bureau of Investigation, District Attorney's Fraud Investigation Unit, U.S. Attorney, Department of Insurance, the Board of Chiropractic Examiners, the California Chiropractic Association and the Chiropractic Board of California."

Cali immediately advised, "Meryl, the language in your letter constitutes threats of criminal and administrative charges to gain an advantage in a civil dispute. In similar instances, lawyers have been disciplined for this conduct." (*Crane v. State Bar* (1981) 30 Cal.3d 117, 121, 123-124; *In the Matter of Malek-Yonan* (Review Dept. 2003) 4 Cal.

State Bar Ct. Rptr. 627, 633, 637.)

"What can I ethically say?" Meryl asked.

Cali responded: "You can say: 'If you attempt to damage my or my client's credit or if you do not cease and desist further action, we will pursue all available legal remedies.'" (State Bar Standing Committee On Professional Responsibility and Conduct, Formal Opinion No. 1991-124 (2004).)

Meryl acknowledged, "The bottom line is that I can present criminal, administrative or disciplinary charges on my own behalf or another. However, I just can't threaten the presentation of criminal, administrative or disciplinary charges to obtain an advantage in a civil dispute. To do so may expose me to discipline for violating CRPC 5-100(A) or even moral turpitude; civil liability for extortion or a criminal action for extortion. I'll be much more careful in my discussions and correspondence."

• *Ellen R. Peck, a former State Bar Court judge, is a sole practitioner in Escondido and a co-author of The Rutter Group California Practice Guide: Professional Responsibility.*

SAN JOURNAL MARKETPLACE
□□□-□□□-□□□□

15

# EXHIBIT 6

## PAGES 16-17

# FUNDING PROBLEMS FOR THE COURTS
# IN SANTA CLARA COUNTY
# SUPERIOR COURT

### Superior Court of California
### County of Santa Clara

191 North First Street
San Jose, California 95113
(408) 882-2700

Chambers of
HON. THOMAS P. HANSEN, Presiding Judge



Contact Person:
Debra F. Hodges
408.882.2717

## FOR IMMEDIATE RELEASE: 3/24/04
## SUPERIOR COURT, COUNTY OF SANTA CLARA, PRESENTS ISSUES TO
## SENATE HEARING, JUDICIAL BRANCH PROPOSED 2004-05 BUDGET

On Thursday, March 18, 2004, the Superior Court of California, County of Santa Clara, joined with other jurisdictions in the North Coast and Bay Area Region to address the *Impact of Chronic State Trial Court Under-funding* at a Senate Legislative Hearing held at Oakland City Hall and chaired by Senator Joseph Dunn (D-Garden Grove). Sen. Dunn chairs the subcommittee on Legislative, Executive, Judiciary, Transportation, & General Government

Ms. Lisa Herrick, President of the Santa Clara County Bar Association, spoke eloquently on behalf of Santa Clara County, contrasting the current state of affairs for the Court with the negative impact of the proposed budget cuts to the Court. Presentations by judges, attorneys, court staff, court-related agency representatives and individual court patrons were made. The Superior Court, County of Santa Clara was represented by Hon. Alden E. Danner, Assistant Presiding Judge, Kiri Torre, Chief Executive Officer, and Kelly McCarthy, Court Reporter.

The testimony focused on the devastating impacts the proposed permanent budget cuts would have on the ability of courts to serve the public, especially self-represented litigants. The purpose of the public hearings is to gather information for consideration by the legislature as discussions continue on the pending budget cuts to the courts. The Bay Area/Northern Coastal Region consists of the Superior Courts located in the counties of Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, San Francisco, San Mateo, Santa Clara, Santa Cruz, Solano, and Sonoma.

*16*

Ltr_seal.dot

# The Mercury News
MercuryNews.com

## Santa Clara County to end contract with Legal Aid Society

**By Brandon Bailey**
**Mercury News**

Article Launched: 02/26/2008 04:41:16 PM PST
Despite objections from some private attorneys, the Santa Clara County board of supervisors voted unanimously this afternoon to end the county's $7 million annual contract with the non-profit Legal Aid Society to represent low-income criminal defendants when county lawyers aren't available.

"..."ing the work to county agencies may not save money, but it will provide "direct oversight and accountability," said Supervisor Blanca Alvarado, citing a recent audit and other criticism of Legal Aid's performance.

Supporters defend the group's work and suggest that officials are canceling the contract to gain more flexibility over costs, at a time when the county is straining to balance its budget.

About 39,000 cases are assigned to court-appointed lawyers each year in Santa Clara County. Most are handled by the public defender, but other attorneys are needed when the public defender's staff has a conflict of interest, such as when they represent a co-defendant in the case.

Officials say they will re-distribute assignments at courthouses around the county so that more cases are handled by the public defender and the alternate defender's office, a separate group of lawyers who also handle criminal cases. The county

counsel, which advises county agencies in civil cases, will take over Legal Aid's role in hiring private attorneys when county lawyers have a conflict of interest.

One veteran criminal defense lawyer warned supervisors that the county counsel may also have conflicts.

When he recently defended a man accused of assaulting county jail guards, attorney Daniel Mayfield said, he needed to subpoena information from the guards and the county hospital - but the county counsel opposed his efforts.

County Counsel Ann Ravel said she would create an ethical "firewall" - with separate policies, staffing and office space - to keep attorneys who represent county agencies from interfering with staffers assigned to oversee defense work.

*Contact Brandon Bailey at bbailey@mercurynews.com or (408) 920-5022.*

*17*

Advertisement



FREE Twenty 4x6" basic prints

Ⓞ photo

9856-0113-2647-5849-0376-5806-89

# EXHIBIT 7

# PAGE 18

## PICTURE OF THE PALO ALTO COURT HOUSE AND ADJOINING PARKING LOT SHOWING LOCATION OF KIRSCH'S CAR AND WERE THE PURPORTED TWO EYE WITNESSES WERE STANDING SOME 300 FEET AWAY



**1**

The two witnesses testified that they were standing inside the building looking out through the emgerency doors and saw petitione key the Rear Driver's Side Door.

**2**

Kirsch testified that his car was was parked un front of the tree with the driver's side of car parked facing away from the court house and at a distance of over 300 feet away from the court house making said observation physicially impossiable.

18